## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GARY RAPCZYNSKI, et al.,                :
                                    :
      Plaintiffs,   :   **3:14-CV-2441**
v.                                      :   **(JUDGE MARIANI)**
                                    :
**DIRECTV, LLC, and MASTEC**            :
**NORTH AMERICA, INC.,**                :
                                    :
      Defendants.   :

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiffs Gary Rapczynski,[1] Antonio Purificato, Andrew James, and Stephen

Rydzanich initiated this action by filing a Complaint against Defendants DIRECTV, Inc.,

DIRECTV, LLC, and MasTec North America, Inc. on December 23, 2014 (Doc. 1). The four

Plaintiffs voluntarily dismissed DIRECTV, Inc. from the lawsuit on March 3, 2015 (Doc. 17),

and refiled an Amended Complaint (Doc. 18) against DIRECTV, LLC and MasTec North

America, Inc. (hereinafter, "Defendants," "DIRECTV," or "MasTec") on the same date. The

Amended Complaint alleges violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201, *et seq.* (Count I), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§

333.101, *et seq.* (Count II), and the Pennsylvania Wage Payment and Collection Law

("PWPCL"), 43 P.S. §§ 260.1, *et seq.* (Count III). Defendants filed a Motion to Dismiss

---

[1] On January 28, 2016, Plaintiff Gary Rapczynski voluntarily dismissed with prejudice his FLSA and
Pennsylvania state law claims against Defendant DIRECTV, LLC. Because Rapczynski brought "his
individual claims against DIRECTV only," (Doc. 18 at ¶ 24), Rapczynski is no longer a party to this action.

Plaintiffs' Amended Complaint on April 2, 2015 (Doc. 29). The motion is briefed and is ripe for decision. For the reasons set forth below, the Court will deny Defendants' motion.

## II. FACTUAL ALLEGATIONS

Plaintiffs allege that DIRECTV conceived of, formed, manages, operates, and oversees a "Provider Network" from its headquarters in El Segundo, California. (Doc. 18 at ¶¶ 11, 14). This network of Providers supplies DIRECTV with technicians, either by serving as the technicians' ostensible employer or by "subcontracting" with technicians dubbed "independent contractors." (*Id.* at ¶ 11). The Provider Network consists of principal intermediaries that DIRECTV refers to as Home Service Providers ("HSPs"), secondary intermediaries that DIRECTV refers to as "Secondary Providers," and a patchwork of largely captive entities that generally are referred to as subcontractors (collectively "Providers"). (*Id.* at ¶ 12). MasTec and DirectSat USA, LLC are HSPs and, therefore, Providers. (*Id.* at ¶ 13). According to Plaintiffs, DIRECTV has been each Provider's primary, if not only, client and has been the major source of each Provider's income. (*Id.* at ¶ 15).

Plaintiffs allege that DIRECTV controls the Providers through a variety of means, including detailed agreements referred to as HSP Agreements, Services Provider Agreements, and Secondary Provider Agreement of Equipment Installation and Service (collectively "Provider Agreements"). (Doc. 18 at ¶ 16). According to Plaintiffs, these Provider Agreements establish virtually identical business relationships between DIRECTV and each Provider, with the same policies, procedures, performance standards, and

2

payment method requirements. (*Id.*). These agreements specify DIRECTV's mandatory

policies and procedures and obligate Providers to hand them down to technicians. (*Id.* at ¶

17). According to Plaintiffs, DIRECTV regularly infuses the Providers with "extraordinary

advance payments" in order to keep the Providers' dependent operations afloat while

preserving an appearance of independence. (*Id.* at ¶ 18). Plaintiffs allege that DIRECTV

seamlessly absorbs the Providers by acquisition when litigation or other circumstances

make the purportedly "independent" relationships between DIRECTV and the Providers a

negative. (*Id.* at ¶ 18-19). Since the inception of the HSP Network, DIRECTV or one of

three remaining HSPs has purchased at least thirteen prior HSPs. (*Id.* at ¶ 19). By way of

example, Plaintiffs allege that MasTec acquired Halsted Communications, Ltd. In or about

June 2011, thereafter conducting business out of Halsted's location and hiring many of

Halsted's employees; Halsted technicians' job duties and working conditions remained

substantially the same after the acquisition and there were no broad changes to job

functions, job titles, job responsibilities, and/or supervisors, and technicians' pay remained

the same. (Doc. 18 at ¶ 20-21).

Plaintiffs are technicians who installed and repaired DIRECTV satellite television

service at customers' homes. (*Id.* at ¶ 10).

Plaintiff Purificato alleges that he was employed by DIRECTV, MasTec, Parabolic

Installations LLC, and P&M Insulation from approximately January 2012 to November 2012.

(*Id.* at ¶ 25). While Purificato does not have all the documents or records possessed by

3

Defendants that bear on his damages, he estimates that, based on his recollection, in a given workweek he would work 45 hours, 23 hours of which were unpaid, he would be subject to chargebacks of $150 per week, and he would be paid $300 per week, which would be reduced by unreimbursed business expenses. (*Id.* at ¶ 26).

Plaintiff Rydzanich alleges that he was employed by DIRECTV, Halsted, and MasTec from approximately 2008 to June 2013. (*Id.* at ¶ 28). While Rydzanich does not have all the documents or records possessed by Defendants that bear on his damages, he estimates that, based on his recollection, in a given workweek he would work 60 hours, 20 hours of which were unpaid, he would be subject to chargebacks of $20 per week, and he would be paid $700 per week. (*Id.* at ¶ 29).

Plaintiff James alleges that he was employed by DIRECTV, DirectSat, and Freedom Communications from approximately September 2011 to April 2012. (Doc. 18 at ¶ 31). While James does not have all the documents or records possessed by Defendants that bear on his damages, he estimates that, based on his recollection, in a given workweek he would work 88 hours, 48 hours of which were unpaid, he would be subjected to chargebacks of $250 per week, and he would be paid $900, which would be reduced by unreimbursed business expenses. (*Id.* at ¶ 32).

According to Plaintiffs, the Provider Agreements enabled DIRECTV to control nearly every facet of Plaintiffs' work, including, but not limited to, what work technicians perform and where, when, and how the work is performed. (*Id.* at ¶ 34). Plaintiffs allege that they,

4

like other technicians, were required to wear uniforms bearing the DIRECTV insignia, carry DIRECTV identification cards, and display the DIRECTV insignia on their vehicles. (*Id.* at ¶ 35). At the beginning of each workday, Plaintiffs, like other technicians, would receive a work order from DIRECTV's dispatching system; DIRECTV used a database program known as SIEBEL to coordinate the assignment of work orders to each Plaintiff based on his "Tech ID Number." (*Id.* at ¶ 36). After receiving their respective work order, Plaintiffs allege that they, like other technicians, were required to call the customer contact for each assigned job to confirm the scheduled arrival time and that they were required to travel to their assigned jobs in the order prescribed by DIRECTV. (*Id.* at ¶ 37). Upon arriving at each job site, Plaintiffs allege that they, like other technicians, were required to check-in with DIRECTV via the dispatching system and that at the end of the job, they were required to inform DIRECTV that the installation was complete and to work directly with DIRECTV employees to activate the customer's service. (Doc. 18 at ¶ 37).

According to Plaintiffs, DIRECTV required them, like other technicians, to follow detailed installation methods to assure that DIRECTV's equipment was installed according to DIRECTV's uniform and nationwide standards and that Plaintiffs and other technicians had no meaningful discretion over installation methods or procedures. (*Id.* at ¶ 39). DIRECTV published uniform training materials that Plaintiffs, like other technicians, were required to review and follow. (*Id.* at ¶ 40). Plaintiffs also allege that DIRECTV

required them, like other technicians, to obtain certifications from the Satellite Broadcasting & Communications Association before being assigned DIRECTV work orders. (*Id.* at ¶ 41). Plaintiffs allege that DIRECTV determined whether Plaintiffs' work merited compensation and dictated the applicable pay rate; DIRECTV utilized a network of quality control personnel and field managers to oversee the work of Plaintiffs and other technicians and to ensure compliance with DIRECTV's uniform standards. (*Id.* at ¶¶ 38, 42).

Plaintiffs further allege DIRECTV controlled the pay of Plaintiffs and other technicians through the common policies and practices mandated in the Provider Agreements. (*Id.* at ¶ 43). Plaintiffs were not paid for "other all" [*sic*] necessary work they performed, but rather were paid under a piece-rate system by which Plaintiffs received a fixed payment for satisfactorily completing a DIRECTV-approved installation or other tasks deemed "productive" tasks. (Doc. 18 at ¶ 44). Plaintiffs also allege that they regularly worked over 40 hours per week and that they, like other technicians, did not receive any overtime premium compensation for hours worked over 40 hours per week. (*Id.* at ¶¶ 45-46). According to Plaintiffs, their work hours included, *inter alia*, time spent performing installations, assembling equipment, driving between job assignments, obtaining and reviewing work schedules, calling customers to confirm installations, obtaining required supplies, assisting other technicians with installations, performing required customer educations, contacting DIRECTV staff to activate customers' service, working on incomplete installations, and working on "rollback" installations where Plaintiffs had to return and

6

perform additional work on installations previously completed. (*Id.* at ¶ 47). Plaintiffs allege

that Defendants did not pay them their piece-rate wages free and clear, but rather that their

total compensation, like that of other technicians, was subjected to "chargebacks" for, *inter*

*alia*, purportedly improper installations, the installation of purportedly faulty equipment, or

purportedly inadequate customer satisfaction ratings. (*Id.* at ¶ 48). Additionally, Plaintiffs

also were required to purchase supplies necessary to perform installations, such as screws,

poles, concrete, and cables. (*Id.* at ¶ 49).

Plaintiffs also allege that, during certain workweeks, their net pay (the piece-rate

wages less all chargebacks and supply expenses) was insufficient to satisfy the

FLSA/PMWA mandate that employees receive a minimum wage of $7.25 for every work

hour. (*Id.* at ¶ 50).

### III. STANDARD OF REVIEW

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it

does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must aver "factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic

recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop.*

*Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words,

7

"[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013)

(internal citations and quotation marks omitted).  A court "take[s] as true all the factual

allegations in the Complaint and the reasonable inferences that can be drawn from those

facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v.*

*Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation

marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to
> determine the sufficiency of a complaint:  First, the court must take note of the
> elements a plaintiff must plead to state a claim.  Second, the court should
> identify allegations that, because they are no more than conclusions, are not
> entitled to the assumption of truth.  Finally, where there are well-pleaded
> factual allegations, a court should assume their veracity and then determine
> whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not show[n]—that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks

omitted).  This "plausibility" determination will be a "context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court

must permit a curative amendment unless such an amendment would be inequitable or

futile." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a
> defendant moves to dismiss it, unless the district court finds that
> amendment would be inequitable or futile, the court must inform the plaintiff
> that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. ANALYSIS

### A. Employer Status under the FLSA

The Court begins with Defendants' argument that Plaintiffs "have failed to plead facts

sufficient to support a reasonable inference that MasTec or DIRECTV were ever their

employers for purposes of the FLSA, PMWA or PWPCL," (Mot. to Dis., Doc. 29 at 2), which

Defendants believe is enough "*alone* [to] support the Court's granting of this Motion," (Defs'

Memo. of Law in Sup. of Mot. to Dis., Doc. 29, Ex. 1 at 18) (emphasis in original)). Upon a

fair reading of the Amended Complaint, the Court finds this argument to be without merit.

The Court's "first inquiry in most FLSA cases is whether the plaintiff has alleged an

actionable employer-employee relationship." *Thompson v. Real Estate Mortgage Network,*

748 F.3d 142, 148 (3d Cir. 2014).

> An "ernployer" is "any person acting directly or indirectly in the interest of an
> employer in relation to an employee . . . ." [29 U.S.C.] § 203(d). An
> "employee" is "any individual employed by an employer." *Id.* § 203(e)(1). To
> "employ" means "to suffer or permit to work." *Id.* § 203(g)

9

*Thompson*, 748 F.3d at 148.  With respect to their employment, Plaintiffs have alleged that

- Purificato was employed by DIRECTV, MasTec, Parabolic Installations LLC, and P&M Insulation from approximately January 2012 until approximately November 2012.  (Doc. 18 at ¶ 25).

- Rydzanich was employed by DIRECTV, Halsted, and MasTec from approximately 2009 until approximately June 2013.  (*Id*. at ¶ 28).

- James was employed by DIRECTV, DirectSat, and Freedom Communications from approximately September 2011 until approximately April 2012.  (*Id*. at ¶ 31).

According to Defendants, Plaintiffs "fail to plead to plead any specific facts regarding the

entities (Halsted Communications, Ltd., Parabolic Installations LLC, P&M Insulation,

DirectSat and Freedom Communications) which actually engaged and paid for their work as

Technicians." (Doc. 29, Ex. 1 at 19).  Defendants DIRECTV and MasTec believe they

"cannot possibly be considered the *joint* employer of an individual who has failed to plead

facts sufficient to raise a reasonable inference that he was *employed at all*." (*Id*.) (emphasis

original).

Plaintiffs' allegations, however, are that they "were employed by" the specific entities

named in Paragraphs 25, 28, and 31 of the Amended Complaint (Doc. 18), including the

named Defendants.  The Court views these as factual allegations deserving of a

presumption of truth during a Rule 12(b)(6) analysis, leaving no question as to whether

Plaintiffs were "employed at all."  While the Court acknowledges that the Amended

Complaint is broad in its allegations that the Plaintiffs were "employed" by the named

10

Defendants and other entities, more specificity is not needed at this stage, particularly given

the "intentional and obvious" breadth of the FLSA's definitions of the terms "employer,"

"employee," and "employ." *Thompson*, 748 F.3d at 148 ("[T]he breadth of these definitions

is both intentional and obvious.").

But even if these allegations are legal conclusions – perhaps a tenable argument

given the necessity of an employer-employee relationship when pursuing an FLSA claim –

the Court finds Defendants' position is without merit at the pleading stage in light of what the

Plaintiffs actually allege. The Plaintiffs allege, *inter alia*, that they were technicians, that their

work was assigned to them by DIRECTV, that they reported the completion of installations

to DIRECTV, that DIRECTV determined whether their work merited compensation, and that

they wore DIRECTV uniforms.  Taking these allegations as true, DIRECTV undoubtedly

suffered or permitted Plaintiffs to work on its behalf and, thus, the Amended Complaint

sufficiently alleges an actionable employer-employee between Plaintiffs and DIRECTV.

(*See supra*, Part II).  As to MasTec, Plaintiffs have alleged sufficient interrelationship of

management, operations control, financial interdependence, and supervision to allow the

case to proceed on the basis of a joint employer theory.

To the extent that Defendants' statement that Plaintiffs "cannot possibly be

considered the joint employer of an individual who has failed to plead facts sufficient to raise

a reasonable inference that he was employed at all," includes a challenge to the ability of

Plaintiffs to proceed on a theory of joint employment, Defendants fare no better.  "When

faced with a question requiring examination of a potential joint employment relationship

under the FLSA," the Third Circuit has concluded that

> courts should consider: 1) the alleged employer's authority to hire and fire the
> relevant employees; 2) the alleged employer's authority to promulgate work
> rules and assignments and to set the employees' conditions of employment:
> compensation, benefits, and work schedules, including the rate and method
> of payment; 3) the alleged employer's involvement in day-to-day employee
> supervision, including employee discipline; and 4) the alleged employer's
> actual control of employee records, such as payroll, insurance, or taxes.

*In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 683 F.3d 462, 469 (3d

Cir. 2012). The Third Circuit has cautioned, however, that

> this list is not exhaustive, and cannot be "blindly applied" as the sole
> considerations necessary to determine joint employment. If a court concludes
> that other indicia of "significant control" are present to suggest that a given
> employer was a joint employer of an employee, that determination may be
> persuasive, when incorporated with the individual factors we have set forth.

*Id*. at 469-70. Because "a determination of joint employment 'must be based on a

consideration of the total employment situation and the economic realities of the work

relationship,'" *id*. at 469 (quoting *Bonnette v. California Health & Welfare Agency*, 704 F.2d

1465, 1470 (9th Cir. 2012)), "district courts should not be confined to 'narrow legalistic

definitions' and must instead consider all the relevant evidence," *id*. This standard is known

as the "*Enterprise* test." *Id*. at 470.

Applying the *Enterprise* test to the well-pleaded facts of Plaintiffs' Amended

Complaint (Doc. 18), Plaintiffs have made more than a sufficient showing of a joint

employment relationship between the named Defendants at the motion to dismiss stage.

12

Taking the alleged facts as true, as the Court must, Plaintiffs have alleged, *inter alia*, that

DIRECTV conceived of, formed, manages, operates, and oversees a network of Providers

that supplies it with technicians, that MasTec is one such Provider, and that DIRECTV is the

primary, if not only, client of the Providers and a major source of their income. (*See supra*,

Part II). Plaintiffs further allege that DIRECTV controls its Providers through detailed

Provider Agreements including mandatory policies and procedures handed down to

technicians. (*Id.*). Additionally, DIRECTV is alleged to have created Plaintiffs' daily work

orders, to have determined whether their work merited compensation and at what pay rate,

and to have used a network of quality control personnel and filed managers to oversee their

work. (*Id.*). As such, Plaintiffs have clearly alleged facts that indicate the presence of the

second and third factors of the *Enterprise* test. As to the fourth factor, the Court does not

expect Plaintiffs to have knowledge of DIRECTV's actual control of employee records, such

as payroll, insurance, or taxes, at this pre-discovery phase of litigation and this factor is, at

worst, neutral towards Plaintiffs. As to the first factor, the allegations that DIRECTV

conducted quality control over Plaintiffs' work, (Doc. 18 at ¶¶ 38, 42), and required them to

obtain certain certifications before being assigned to DIRECTV work orders, (*id.* at ¶ 41),

support a reasonable inference that DIRECTV had some authority to hire and fire the

Plaintiffs. Read together, the allegations in the Amended Complaint (Doc. 18) provide

sufficient indicia of DIRECTV's significant control over Providers, including MasTec, and

their employees so as to allow Plaintiffs' claim to proceed on a joint employer theory.

While Defendants' Motion to Dismiss asserts that "all of Plaintiffs' federal and state claims" should be dismissed "inasmuch as they failed to plead facts sufficient to support a reasonable inference that MasTec or DIRECTV were ever their employers for purposes of the FLSA, PMWA, or PWPCL," (Doc. 29, Ex. 1 at 2), Defendants only set forth arguments on this point as to the FLSA in their Brief in Support of their Motion and the FLSA and PMWA in their Reply Brief. Because Defendants only address their arguments in their supporting brief to the FLSA, the Court finds it unnecessary to address either the PMWA or the PWPCL in conjunction with this argument for dismissal. *See D'Aiuto v. City of Jersey City,* No. CIVA 06–6222 JAG, 2007 WL 2306791, at *4 n. 1 (D.N.J. Aug.8, 2007) ("[T]his Court has discretion to decline to consider new facts or arguments raised in a reply."). However, the Court notes that "[t]he PMWA is essentially the Pennsylvania analogue of the federal FLSA," *Soles v. Zartman Const., Inc.*, No. 4:13-cv-29, 2014 WL 3557197, at *2 (M.D. Pa. July 18, 2014), and, as Plaintiffs point out, (*see* Doc. 35 at 13), defines the terms "employer," "employee," and "employ" similarly. 43 Pa. Stat. Ann. § 333.103. The Court's analysis as to the FLSA applies equally to Plaintiff's PMWA claims.

In sum, the Court finds no deficiency in Plaintiffs' allegations as to their employment that could justify dismissal. *See Schmidt v. DIRECTV, LLC*, No. CV 14-3000, 2016 WL 519654, at *12 (D. Minn. Jan. 22, 2016), Report and Recommendation (collecting cases finding sufficient allegations of an employment relationship between DIRECTV, Providers, and technician plaintiffs), Order adopting Report and Recommendation, No. CV 14-3000,

14

2016 WL 526210 (D. Minn. Feb. 9, 2016). The Court will not dismiss Plaintiffs' FLSA claims for want of a sufficient statement of an employee-employer relationship between the Plaintiffs and the named Defendant or Defendants against whom they have respectively brought claims.

## B. Statute of Limitations

Defendants' argument that the Court should limit Plaintiffs Purificato and Rydzanich's FLSA claims because "they do not plead facts sufficient to support a reasonable inference that Defendants engaged in 'willful' misconduct,' (Doc. 29, Ex. 1 at 12), which would trigger a three-year statute of limitations rather than a two-year limit, is without merit. In FLSA actions, a plaintiff must bring a claim within two years after the accrual of the cause of action; however, if the defendant's violation is proven willful, the statute of limitations is extended to three years. *See* 29 U.S.C. § 255(a). As defined by the United States Supreme Court, willfulness requires "more than negligence" and requires a showing that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988). "'Whether Defendant['s] violations of the FLSA were willful is an issue going to the merits of the case . . . .' Facts regarding willfulness must be explored during discovery, and the [Defendants] may challenge the three-year statute of limitations at a later date." *Gallagher v. Lackawanna*, No. 3:07-cv-0912, 2008 WL 9375549, at *9 (quoting *Resendiz–Ramirez v. P & H Forestry, LLC,* 515 F. Supp. 2d 937, 942 (W.D. Ark. 2007)) (internal

citation omitted); *Alston, et al. v. DIRECTV*, No. 3:14-cv-04093, 2015 WL 2451219, at *4

(D.S.C. May 22, 2015) (denying DIRECTV and MasTec's Motion to Dismiss Plaintiffs' FLSA

claims for having been filed outside the statute of limitations where "[f]urther facts relevant

to the nature of the employment and work relationships, and alleged willfulness will likely be

elicited during the course of discovery."); *see also Pignataro v. Port Auth. of N.Y. & N.J.*,

593 F.3d 265, 273 (3d Cir. 2010) ("Whether a violation of the FLSA is willful is a question of

fact that is reviewed for clear error."). Therefore, at this stage in the litigation, Plaintiffs'

allegations in the Amended Complaint that "Defendants' FLSA violations were willful and

undertaken with reckless disregard of clearly applicable FLSA provisions" (Doc. 18, ¶ 58),

and the accompanying factual allegations in the Amended Complaint, have been sufficiently

pleaded to warrant proceeding based on a three year statute of limitations period at this

early point in the litigation.

Furthermore,

Federal Rule of Civil Procedure 8(c) deems a statute of limitations bar to be an affirmative defense that must be pleaded in an answer to the complaint. *See* Fed. R. Civ. P. 8(c). Nevertheless, the court may dismiss a complaint as time-barred if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)); *see also Oshiver* [*v. Levin, Fishbein, Sedran & Berman*], 38 F.3d [1880,] 1384 n. 1 (3d. Cir. 1994) ("While the language of Fed. R. Civ. P. 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b) (6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading.").

*McDonald v. SEIU Healthcare Pennsylvania*, No. 1:13-cv-2555, 2014 WL 4672493, at *5 (M.D. Pa. Sept. 18, 2014). This simply is not such a case; the Court cannot say at this stage that, with respect to the FLSA claims, the Amended Complaint has "a built-in defense and is essentially self-defeating." 5B Fed. Prac. & Proc. Civ. § 1357 (3d ed.).

### C. James and Rydzanich's Hourly Wages and the FLSA and PMWA

Defendants next argue that, upon "the application of simple arithmetic" to the allegations contained in the Amended Complaint as to Plaintiffs James and Rydzanich, these two Plaintiffs were paid "effective hourly wage[s] [that] exceeded the minimum wage rates set under the FLSA and the PMWA." (Doc. 29, Ex. 1 at 15). Thus, according to Defendants, "the allegations of the [Amended Complaint] not only fail to support plausible claims for minimum wage violations," but also "confirm that James and Rydzanich were always paid more than the FLSA and PMWA minimum wage for their alleged work." (*Id.* at 16).

"Plaintiffs need not plead with 'mathematical precision,' and are entitled to draw on personal experience and memory in order to allege facts demonstrating they received less than minimum pay." *Berger v. DIRECTV, Inc.*, No. 3:14-CV-01661-PK, 2015 WL 1799996, at *8 (D. Or. Apr. 16, 2015). The Court is not inclined to dismiss Plaintiffs James and Rydzanich's claims where, in setting forth the figures used for Defendants' calculations, these Plaintiffs specifically allege that they do "not have all the documents or records possessed by Defendants that bear on [their] damages." (Doc. 18 at ¶¶ 29, 32).

17

Furthermore, the Court finds Defendants' "simple arithmetic" somewhat suspect, because,

in completing their computations, they appear to cherry-pick which allegations to factor into

their equations and which to exclude.  For example, Defendants ignore all Plaintiffs'

allegations that they "were required to purchase supplies necessary to perform installations,

such as screws, poles, concrete, and cables" and that their claims of insufficient net pay

result from the following calculation: "the piece-rate wages less all chargebacks and *supply*

*expenses*." (*Id*. at ¶¶ 49-50) (emphasis added).  The Code of Federal Regulations

specifically addresses such a situation with respect to the calculation of minimum or

overtime wages under the FLSA:

> [I]f [there] is a requirement of the employer that the employee must provide
> tools of the trade which will be used in or are specifically required for the
> performance of the employer]s particular work, there would be a violation of
> the Act in any workweek when the cost of such tools purchased by the
> employee cuts into the minimum or overtime wages required to be paid him
> under the Act.

29 C.F.R. § 531.35.  Thus, the Court cannot agree with Defendants argument that "[i]t

follows" from their calculations that Plaintiffs' allegations make them unable to make out a

minimum wage claim under the FLSA and PMWA.

Defendants also argue that the allegations as to Rydzanich and James are too

"generic" "to state a minimum wage claim with respect to any particular work week."  The

Court will not address this argument as it appears only in Defendants' Reply Brief.

18

### D. Applicability of the PWPCL

Defendants also argue that Plaintiffs have failed to plead facts sufficient to make out

a claim under the PWPCL for two reasons: (1) "Plaintiffs have failed to plead facts sufficient

to raise a reasonable inference that [Defendants], a subcontractor or any other entity ever

made 'wage' payments to Plaintiffs, or ever had any obligation to do so;" and (2) "Plaintiffs'

allegations fail to raise a reasonable inference of unlawful 'deductions' from those wages," if

any. (Doc. 29, Ex. 1 at 17).

"The WPCL was enacted to provide employees a means of enforcing payment of

wages and compensation withheld by an employer." *Ely v. Susquehanna Aquacultures,*

*Inc.,* --- A.3d ----, 2015 WL 7571961, at *5 (Pa. Super. Ct. 2015) (quoting *Voracek v. Crown*

*Castle USA Inc.,* 907 A.2d 1105, 1109 (Pa. Super. Ct. 2006)). The Act defines "employer"

as including "every person, firm, partnership, association, corporation, receiver or other

officer of a court of this Commonwealth and any agent or officer of any of the above-

mentioned classes employing any person in this Commonwealth." 43 Pa. Stat. Ann. §

260.2a. "Any employe[2] or group of employes, labor organization or party to whom any type

of wages is payable may institute actions provided under [the WPCL]." *Id.* at § 260.9a. The

WPCL does not create a right to compensation, but instead "provides a statutory remedy

when the employer breaches a contractual obligation to pay earned wages." *Weldon v.*

*Kraft, Inc.,* 896 F.2d 793, 801 (3d Cir. 1990). In order to make a out claim under the WPCL,

---

[2] The WPCL and related regulations use the words "employe" and "employes" rather than "employee" and "employees."

19

the plaintiff need not plead the existence of any formal employment contract. Rather the plaintiff need only plead the existence of some contractual agreement to pay wages that defendant now owes to the plaintiff. Such a binding agreement may be express or, as the Third Circuit noted in *De Asencio,* it may be implied. In the context of an employment relationship "a promise to pay the reasonable value of the service is implied where one performs for another, with the other's knowledge, a useful service of a character that is usually charged for, and the latter expresses no dissent or avails himself of the service." *McGough v. Broadwing Commc'ns, Inc.,* 177 F. Supp. 2d 289, 297 (D.N.J. 2001) (quoting *Martin v. Little, Brown and Company,* 450 A.2d 984 (1981)).

*Euceda v. Millwood, Inc.*, No. 3:12-0895, 2013 WL 4520468, at *4 (M.D. Pa. Aug. 26, 2013)

The PWPCL requires that

[e]very employer shall pay all wages, other than fringe benefits and wage supplements, due to his employes on regular paydays designated in advance by the employer. . . . The wages shall be paid in lawful money of the United States or check, except that deductions provided by law, or as authorized by regulation of the Department of Labor and Industry for the convenience of the employe, may be made including deductions of contributions to employe benefit plans which are subject to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

43 Pa. Stat. Ann. § 260.3. A list of deductions authorized by law is codified at 34 Pa. Code

§ 9.1. "The first twelve provisions [of the regulations] delineate such deductions as, for

example, contributions to employee welfare and pension plans, payments to credit unions

and savings funds, contributions for charitable purposes, deductions for social security and

taxes, labor organization dues, and other specified deductions." *Ressler v. Jones Motor

Co., Inc.,* 487 A.2d 424, 427-28 (1985). The thirteenth provision is a catch-all category

allowing "other deductions authorized in writing by employes as in the discretion of the

Department [of Labor and Industry] is proper and in conformity with the intent and purpose

20

of the [PWPCL]." 34 Pa. Code § 9.1(13). "Any deduction of earned wages not expressly

authorized by law or regulation, runs afoul of 43 P.S. § 260.3." *Levy v. Verizon Info. Servs.,*

*Inc.*, 498 F. Supp. 2d 586, 602 (E.D.N.Y. 2007).

Accepting all factual allegations in the Amended Complaint as true, the Court finds

that the Plaintiffs have sufficiently stated a WPCL claim. As to Defendants' argument that

Plaintiffs have not sufficiently alleged that Defendants or any other entity was obligated to

make wage payments to them, a fair reading of the Amended Complaint indicates

otherwise. This argument, as Defendants' acknowledge, (*see* Doc. 29, Ex. 1 at 13), is

essentially a reassertion of it argument that there are no facts sufficient to raise a

reasonable inference that Plaintiffs were "employed at all," which the Court has discussed

above. (*See supra* Part IV.A). Putting aside Plaintiffs' explicit allegations that they were

"employed" by the named Defendants, the allegations that DIRECTV oversees a Provider

Network, which includes MasTec, that supplies it with technicians, and that Plaintiffs are

technicians in this Network who fulfill DIRECTV work orders are sufficient to imply "a

promise to pay the reasonable value of the service" performed by Plaintiffs for Defendants.

*Euceda v. Millwood, Inc.*, 2013 WL 4520468, at *4; *see also Oxner v. Cliveden Nursing &*

*Rehab. Ctr. PA, L.P.*, No. CV 14-07204, 2015 WL 5460597, at *3 (E.D. Pa. Sept. 17, 2015)

("If Oxner's supervisors specifically instructed her to work additional hours, as alleged . . .,

then she performed a 'useful service' for Defendants, 'with their knowledge,' of a 'character

21

that is usually charged for' and Defendants expressed no dissent and availed themselves of the service.").

With respect to Defendants' second argument, that Plaintiffs have failed to raise a reasonable inference of unlawful deductions from those wages, Plaintiffs allege that they were "subjected to 'chargebacks' for, *inter alia*, purportedly improper installations, the installation of purportedly faulty equipment, or purportedly inadequate customer satisfaction ratings." (Doc. 18 at ¶ 48).  To the extent that the Defendants seek dismissal of Plaintiffs' claims on the basis of the failure to allege the illegality of those chargebacks, such an assertion presents a basis for an affirmative defense that the chargebacks were lawful, but presents no basis for the dismissal of Plaintiffs' claims.

## V. CONCLUSION

For the foregoing reasons, the Court will deny Defendants' Motion to Dismiss (Doc. 29).  A separate Order follows.

Robert D. Mariani
United States District Judge